# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| INTERNATIONAL TRAILER GROUP, LLC, | § § § § § | |
| Plaintiff, | § | |
| v. | § § | Case No. 1:25-cv-01168 |
| SHORT GO, INC. *d/b/a* TWISTER TRAILER AND BOSS RANCH, LLC, | § § § § | |
| Defendants. | § § § | |

## PLAINTIFF'S RESPONSE TO DEFENDANTS SHORT GO, INC.'S AND BOSS RANCH, L.L.C.' S MOTION TO TRANFER VENUE FOR FORUM NON CONVENIENS

## TABLE OF CONTENTS

Table of Contents ................................................................................................... ii

Table of Authorities ............................................................................................... iv

I.    Brief Background ............................................................................................ 1

II.   Argument ........................................................................................................ 5

    A.    Standard for Motion to Transfer Venue Under 28 U.S.C. § 1404 ............... 5

        i.    Defendants Must Satisfy a Heavy Burden to Transfer Venue ......... 5

        ii.   Defendants Must Demonstrate by Plainly Obvious Evidence That the Marginal Gain in Convenience Under the Private-Interest and Public-Interest Factors Will Be Significant ...................................... 6

    B.    Defendants Cannot Demonstrate, by Materially More than a Preponderance of the Evidence, that the Marginal Gain in Convenience Under the Private-Interest Factors Will Be Significant ............................. 7

        i.    The Relative Ease of Access to Proof Favors the Western District of Texas ................................................................................................. 7

        ii.   The Availability of Witnesses Strongly Favors Western District of Texas ................................................................................................. 8

        iii.  Cost of Attendance for Willing Witnesses Strongly Favors the Western District of Texas ................................................................. 9

        iv.   All Other Practical Problems That Make Trial Easy, Expeditious, and Inexpensive is Neutral .............................................................. 10

        v.    Defendants Have Not Met Their Heavy Burden to Transfer Venue .................................................................................. 10

    C.    Defendants Cannot Demonstrate, by Materially More than a Preponderance of the Evidence, that the Marginal Gain in Convenience Under the Public-Interest Factors Will Be Significant ............................. 10

        i.    Court Congestion is Neutral at Best ............................................... 10

        ii.   Local Interest Weighs Heavily in Favor of the Western District of Texas ............................................................................................... 11

        iii.  Familiarity with Governing Law is Neutral ................................... 12

iv.    Avoidance of Conflicts of Law or Application of Foreign Law is
       Neutral ................................................................................................ 13

v.     Defendants Have Not Met Their Heavy Burden to
       Transfer Venue .................................................................................... 13

Prayer ............................................................................................................... 14

# TABLE OF AUTHORITIES

*Bennett v. Moran Towing Corp.*,
    181 F. Supp. 3d 393 (S.D. Tex. 2016) .................................................. 5–6, 9–10

*Def. Distributed v. Bruck*,
    30 F.4th 414 (5th Cir. 2022) ...................................................................... 6

*In re Clarke*,
    94 F.4th 502 (5th Cir. 2024) ........................................................... 6–7, 9, 11

*In re Horseshoe Entm't*,
    337 F.3d 429 (5th Cir. 2003) ..................................................................... 10

*In re Planned Parenthood Fed'n of Am., Inc.*,
    52 F.4th 625 (5th Cir. 2022) ................................................................... 5, 11

*In re TikTok, Inc.*,
    85 F.4th 352 (5th Cir. 2023) ...................................................................*passim*

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) ............................................................... 5–6, 7, 9

*Quest NetTech Corp. v. Apple, Inc.*,
    No. 2:19-CV-118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019) .............. 5

*Sivertson v. Clinton*,
    No. 3:11-CV-0836-D, 2011 WL 4100958, at *3 (N.D. Tex. Sept. 14, 2011) ....... 6

*SQIP, LLC v. Cambria Co., LLC*,
    728 F. Supp. 3d 447 (E.D. Tex. 2024) ............................................................ 5

*Young v. Armstrong World Indus., Inc.*,
    601 F. Supp. 399 (N.D. Tex. 1984) ................................................................ 9

*Zurich Am. Ins. Co. v. Tejas Concrete & Materials Inc.*,
    982 F.Supp.2d 714 (W.D. Tex. 2013) ............................................................. 8

Plaintiff International Trailer Group, LLC files this Response to Defendants Short Go, Inc.'s ("Short Go"), and Boss Ranch, LLC's ("Boss Ranch") (collectively, "Defendants"), Motion to Transfer Venue for Forum Non Conveniens ("Motion") and would show unto the Court as follows:

## I.
### BRIEF BACKGROUND

1.      Defendants incorrectly try to cast this case as a dispute about trailer manufacturing in Fort Scott, Kansas.[1] It is not. This case is a dispute over a breach of contract made in Texas with a Texas plaintiff, the breach of which has caused economic harm to Plaintiff's Texas business.[2] Defendants breached a written, signed asset-purchase agreement ("APA") by refusing at the eleventh hour to close on the agreed purchase and sale, after the parties spent many months negotiating, drafting, and finalizing the APA.[3] The material witnesses to the dispute are those who participated in that negotiation and execution, not employees of the target company working at a manufacturing facility in Kansas who had no role in, and likely little or no knowledge of, the contract.[4] The relevant events are the negotiating of the terms, the exchange of redlined drafts, the signing of the APA, and the readiness of the funds to close the purchase. Those events happened in Texas and, to a lesser extent, in

---

[1] Dkt. No. 20 at p. 3. Despite Defendants' contention to the contrary, Plaintiffs never agreed to transfer venue to Kansas.

[2] Dkt. No. 1 at ¶¶ 8–47.

[3] *Id*. at ¶¶ 18–26.

[4] *Id*.

Louisiana, not in Kansas.[5]

2.    Plaintiff does not contend Defendants failed to deliver trailers from Kansas, or that Defendants manufactured defective or off-spec trailers in Kansas, or that Defendants failed to perform *any* obligation in Kansas.[6] Plaintiff sued because Defendants from Louisiana agreed to sell a business to a Plaintiff in Texas, one of the facilities of which was located in Kansas, then refused to close on that agreement by delivering the executed closing documents to Texas and receiving the closing price from Texas.[7]

3.    Defendants, for their part, contend only that there *was* no enforceable contract at all. They do not dispute that they did not perform or close; they say there was no agreement. That argument is about contract formation, not manufactured goods or manufacturing activity. Therefore, the relevant facts, documents, and witnesses in the case are those that pertain to the creation and execution of the contract—the negotiation and dealings between the parties, the execution of the APA, Plaintiff's performance of the conditions to closing, and Defendants' failure to close.[8]

4.    An analogy illustrates the point. Suppose a U.S.-based offshore oil and gas operator and a U.S.-based drilling-fluids company negotiate and execute a services agreement for work on an offshore platform off the coast of Equatorial Guinea. The operator later refuses to perform the agreement, claiming it never signed

---

[5] *Id.*

[6] *See generally* Dkt. No. 1.

[7] *Id.*

[8] *Id.*

it. The drilling-fluids company files suit in Texas, where it is based. Admitting it never performed the agreement, the operator nevertheless insists the dispute should be heard in the courts of Equatorial Guinea solely on the ground that the platform where the work was to be performed is located there. Under recent and controlling Fifth Circuit precedent, the operator's motion fails. A dispute about the formation and existence of an agreement is properly heard where the Plaintiff does business, made the agreement, and performed its end of the bargain—not where the Defendant happens to own one of the assets being transferred in the agreement.

5.       The same is true here. The Fort Scott factory workers were never part of the deal-making. They did not negotiate the APA, they did not execute it, and they had no role in Defendants' decision to reject it on the eve of closing. Defendants offer no evidence the employees even knew about the terms of the agreement. Defendants' effort to make the factory employees the centerpiece of the venue analysis distorts even Defendants' own version of what this case is about.

6.       The key witnesses in this litigation are those with knowledge of the negotiation, terms, and execution of the APA, and of Defendants' decision to repudiate it on the eve of closing. They are:

- Plaintiff's principal and founder, Daniel Perez ("Perez"), the individual responsible for negotiating and executing the APA. Mr. Perez lives and works in Brenham, Texas.[9]

- Jack Eggleston ("Eggleston"), Plaintiff's counsel in the negotiations, drafting, and execution of the APA, and the one through whom all signatures and funds were to be exchanged at closing. Mr. Eggleston

---

[9] *Id.* at ¶ 1.

lives and works in Weatherford, Texas.[10]

- Emma Grotting ("Grotting"), counsel for Plaintiff regarding the negotiations and executing of the APA.[11] Ms. Grotting also lives and works in Texas.

- Defendant Short Go, Inc., a Defendant and corporation organized and existing under the laws of the State of Louisiana.[12]

- Defendant Boss Ranch, LLC, a Defendant and limited liability company organized and existing under the laws of the State of Louisiana.[13]

- Steven Brent Mosing ("Mosing"), the founder and Director of Short Go and Officer of Boss Ranch[14] and responsible for negotiating and signing the APA on behalf of Short Go and Boss Ranch.[15] Mosing lives and works in Louisiana.[16]

- Daniel Landry ("Landry"), counsel for Defendants in the negotiation and execution of the APA.[17]  Landry lives and works in Louisiana.[18]

- Erich Mosing ("Erich"), a Director of Short Go, who is a resident of Louisiana.[19]

- Susan Broaddus ("Broaddus"), Mosing's assistant.[20] Upon information and belief, Broaddus lives and works in Louisiana.

7. Those were the persons who communicated about, and in the case of Mosing and Perez, signed the APA. None lives or works primarily in Kansas. Every

---

[10] Exhibit 1-A.

[11] *Id.*

[12] Exhibit 1-B.

[13] Exhibit 1-C.

[14] Exhibit 1-B; Exhibit 1-C.

[15] *Id.*

[16] *Id.*

[17] Exhibit 1-A; Exhibit 1-E.

[18] Exhibit 1-B.

[19] Exhibit 1-A.

[20] Exhibit 1-F.

4

witness with meaningful knowledge of the negotiation and execution of the APA is located in either Texas or Louisiana. And the closing of the APA itself was to take place in Weatherford, Texas, at the office of Eggleston, where the final drafts of the closing documents were prepared, from where they were circulated to Mosing and Landry in Louisiana and Perez in Brenham, Texas for signature, and where Plaintiff's closing funds were being held in Eggleston's IOLTA account awaiting Mosing's performance of the APA he signed and sent to Texas two months earlier.

## II.
### ARGUMENT

**A.    Standard for Motion to Transfer Venue Under 28 U.S.C. § 1404.**

    i.    <u>Defendants Must Satisfy a Heavy Burden to Transfer Venue</u>.

8.    Defendants fail to acknowledge, much less satisfy, the heavy burden that the law imposes on a party seeking to transfer of venue. "The burden on the movant is 'significant,' and for a transfer to be granted, the transferee venue must be '*clearly more convenient than the venue chosen by the plaintiff.*'" *Bennett v. Moran Towing Corp.*, 181 F. Supp. 3d 393, 398 (S.D. Tex. 2016) (quoting *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008)) (emphasis added); *see also In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 629 (5th Cir. 2022) ("But the fact that litigating would be more convenient for that defendant elsewhere is not enough to justify transfer. Instead, the party seeking transfer *must clearly establish good cause* for transfer based on convenience and justice." (emphasis added)). "The 'clearly more convenient' standard is not equal to a clear-and-convincing-evidence standard, but it is nevertheless 'materially more than a mere preponderance of convenience.'" *SQIP,*

*LLC v. Cambria Co., LLC*, 728 F. Supp. 3d 447, 452–53 (E.D. Tex. 2024) (quoting *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-CV-118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019)); *see also In re Clarke*, 94 F.4th 502, 508 n.3 (5th Cir. 2024) ("As *Defense Distributed* explains, a mere preponderance of the evidence is insufficient.").

9.    To establish "good cause," a "movant must show (1) that the marginal gain in convenience will be significant, and (2) that its evidence makes it plainly obvious—i.e., clearly demonstrated—that those marginal gains will *actually* materialize in the transferee venue." *In re Clarke*, 94 F.4th at 508 (citing *Def. Distributed v. Bruck*, 30 F.4th 414, 433 (5th Cir. 2022)) (emphasis in original). "The court cannot transfer a case where the result is merely to shift the inconvenience of the venue from one party to the other." *Bennett*, 181 F. Supp. 3d at 398 (quoting *Sivertson v. Clinton*, No. 3:11-CV-0836-D, 2011 WL 4100958, at *3 (N.D. Tex. Sept. 14, 2011)).

ii.    <u>Defendants Must Demonstrate by Plainly Obvious Evidence That the Marginal Gain in Convenience Under the Private-Interest and Public-Interest Factors Will Be Significant.</u>

10.    "[W]hen assessing whether the movant clearly carried its burden," the court "must consider the following public-interest and private-interest factors. *In re Clarke*, 94 F.4th at 509 (citing *In re TikTok, Inc.*, 85 F.4th 352, 358 (5th Cir. 2023)).

11.    "The private-interest factors are '(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *In re Clarke*, 94 F.4th at 509 (quoting *In re Volkswagen*, 545 F.3d at 315).

6

12.    "The public-interest factors are '(5) the administrative difficulties flowing from court congestion; (6) the local interest in having localized interests decided at home; (7) the familiarity of the forum with the law that will govern the case; and (8) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.'" *Id*.

**B.    Defendants Cannot Demonstrate, by Materially More than a Preponderance of the Evidence, that the Marginal Gain in Convenience Under the Private-Interest Factors Will Be Significant.**

i.    The Relative Ease of Access to Proof Favors the Western District of Texas.

13.    The first factor relates to the "documents and physical evidence relating to the [case]." *In re Volkswagen*, 545 F.3d at 316. "The question is *relative* ease of access, not *absolute* ease of access." *In re TikTok*, 85 F.4th at 358 (emphasis in original). "That means this factor weighs in favor of transfer where the current district lacks any evidence relating to the case." *Id.* However, when the "vast majority of the evidence is electronic, and therefore equally accessible in either forum, this factor bears less strongly on the transfer analysis." *Id.*

14.    Here, almost all the communications between the parties occurred electronically.[21] Despite Defendants' attempted mischaracterization of the facts, there is no evidence located at the manufacturing facility in Kansas that would bear any relevance on the issues presented to this Court—namely, did Defendants breach the APA by failing to close.[22] Rather, nearly all of the communications took place via

---

[21] Exhibit 1-A; Exhibit 1-D; Exhibit 1-F.

[22] *See generally* Dkt. No. 1.

email between parties located in Texas and Louisiana.[23] This factor weighs in favor of the Western District of Texas.

      ii.      <u>The Availability of Witnesses Strongly Favors Western District of Texas</u>.

15.      "This factor favors transfer where 'non-party witnesses are outside the Western District's subpoena power and a proper venue that does enjoy absolute subpoena power for both depositions and trial is available.'" *In re TikTok*, 85 F.4th at 360. Additionally, "the availability of compulsory process receives less weight when it has not been alleged or shown that any witness would be unwilling to testify." *Id.* In *In re TikTok*, the Fifth Circuit highlighted how district courts are allowed to give this factor less weight under these circumstances, where no witness is alleged to be unwilling to testify. *In re TikTok*, 85 F.4th at 361; *Zurich Am. Ins. Co. v. Tejas Concrete & Materials Inc.*, 982 F.Supp.2d 714, 726 (W.D. Tex. 2013).

16.      Defendants assert, without support, that the majority of individuals aware of the negotiations reside within the absolute subpoena power of the District of Kansas. But Mr. Mosing's own declaration does not bear that out. The reason is straightforward: Mr. Mosing himself was the individual responsible for negotiating the APA, and he is a resident of Louisiana, not Kansas.[24] Conspicuously absent from his declaration is any indication of his own residence or the states of incorporation of Short Go and Boss Ranch. Those facts, inconveniently for Defendants, do not point this case toward Kansas.[25]

---

[23] Exhibit 1-A; Exhibit 1-D; Exhibit 1-F.

[24] Exhibit 1-B; Exhibit 1-C.

[25] *Id.*

17.    Short Go surely does employ factory workers in Kansas. But none of those employees had any role in negotiating or executing the APA. Defendants cannot manufacture a Kansas connection by pointing to workers who were never part of the deal. In addition, Defendants never allege, let alone offer proof, that any witness would be unwilling to testify due to geography. Because all of the key witnesses are located in Texas or Louisiana, the factor weighs strongly in favor of the Western District of Texas.

      iii.     <u>Cost of Attendance for Willing Witnesses Strongly Favors the Western District of Texas</u>.

18.    The Fifth Circuit uses a 100-mile threshold in assessing this factor. *In re Volkswagen*, 545 F.3d at 315. "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Id.* The Fifth Circuit noted in *In re TikTok*, it is the "location of key, non-party witnesses that dominates," not the location of party witnesses or of non-key, non-party witnesses. *Bennet*, 181 F.Supp.3d at 399. "The convenience of one key witness may outweigh the convenience of numerous less important witnesses." *Bennet*, 181 F.Supp.3d at 400; *see, e.g., Young v. Armstrong World Indus., Inc.*, 601 F. Supp. 399, 401-02 (N.D. Tex. 1984). The moving party must "specifically identify key witnesses and outline the substance of their testimony." *Id.; see also, In re Clarke*, 94 F.4th at 514.

19.    Defendants do not even attempt to identify any key witnesses in Kansas, let alone outline their testimony or what import it would have on the formation of the

APA.[26] Defendants state, in conclusory fashion, that the witnesses reside in Kansas. Not so. The key witnesses to this litigation reside in Texas and Louisiana, as outlined above. The 400 mile driving distance from Lafayette, Louisiana, to Austin, Texas, is half the 800 mile drive from Lafayette to Kansas City. Accordingly, this factor weighs heavily in favor of the Western District of Texas.

      iv.     <u>All Other Practical Problems That Make Trial Easy, Expeditious, and Inexpensive is Neutral</u>.

20.     "The delay associated with transfer may be relevant in rare and special circumstances, such as where a transfer of venue would cause yet another delay in protracted litigation." *Bennet*, 181 F.Supp.3d at 401; (citing *In re Horseshoe Entm't*, 337 F.3d 429, 435 (5th Cir. 2003)). Plaintiffs agree with Defendants that, given the early procedural posture of this case, this factor is neutral at best; it certainly does not favor transfer.[27]

      v.     <u>Defendants Have Not Met Their Heavy Burden to Transfer Venue</u>.

21.     Defendants cannot demonstrate, by materially more than a preponderance of the evidence, that any marginal gain in convenience under the private-interest factors (even if it existed) would be significant. In fact, the majority of the factors weigh heavily in favor of the Western District of Texas. Accordingly, this Court should deny this Motion.

---

[26] *Id.* at 5-6.

[27] Defendants' Motion to Transfer Venue at 6.

**C.    Defendants Cannot Demonstrate, by Materially More than a Preponderance of the Evidence, that the Marginal Gain in Convenience Under the Public-Interest Factors Will Be Significant.**

    i.    <u>Court Congestion is Neutral at Best</u>.

22.    Defendants rely on two statistics in support of their court-congestion argument: the Western District of Texas takes a median of 0.6 months (18 days) longer to resolve cases than the District of Kansas, and it carries approximately three times the number of pending cases. Neither figure supports transfer. In *In re Clarke,* the Fifth Circuit held that statistics about time to trial and pending cases are not "particularly relevant" to a district court's determination when weighing the factor of court congestion:

> Neither statistic is particularly relevant. In *TikTok*, we rejected petitioner's statistics on time to trial, explaining that contentions relying on such statistics were foreclosed by *Planned Parenthood's* recognition that, as a general matter, the district court is better placed to evaluate its 'docket efficiency. Accordingly, petitioners' and CFTC's statistics carry little weight.

*In re Clarke*, 94 F.4th at 510 (internal quotations omitted). In *In re Clarke*, the Fifth Circuit faced a district court with more than twice the time-to-trial and more than three times the pending cases of the would-be transferee court. Yet it still declined to find that court congestion favored transfer. This factor favors transfer far less in this case than in *In re Clark*.

    ii.    <u>Local Interest Weighs Heavily in Favor of the Western District of Texas</u>.

23.    When weighing this factor, the Court looks to the significant connections between a particular venue and the events that gave rise to the suit. *In re TikTok*, 85 F.4th at 364. The "place of the alleged wrong is one of the most important factors in venue determinations." *Id.* This factor weighs against transfer when "the citizens of

the transferor district have a greater stake in the litigation than the citizens of the transferee district." *Id.* (citing *In re Planned Parenthood*, 52 F.4th at 632).

24.     The local-interest factor points firmly toward the Western District of Texas. Plaintiff is a Texas resident whose principal place of business is in Brenham, Washington County, Texas.[28] Plaintiff negotiated and executed the APA from Texas, and it is in Texas where the consequences of Defendants' breach have been felt most acutely.[29] Defendants, by contrast, are Louisiana residents who negotiated, executed, and then refused to close under the APA, leaving a Texas business to absorb the fallout.[30]

25.     That fallout has been significant. Plaintiff cannot restart its manufacturing operations in Mexico, having terminated that relationship in reliance on Defendants' promises under the APA.[31] Plaintiff's investor walked away from the deal entirely after Defendants attempted to re-trade the agreed purchase price on the eve of closing.[32] And Plaintiff has absorbed substantial fees and costs incurred over the course of a lengthy negotiation process that Defendants ultimately refused to honor.[33] The citizens of the Western District of Texas have a direct and substantial interest in seeing a Texas business made whole for those losses.

26.     Defendants, on the other hand, face no comparable hardship. Because

---

[28] Dkt. No. 1 at ¶ 1.

[29] *See generally* Dkt. No. 1.

[30] *Id.*; Exhibit 1-B; Exhibit 1-C.

[31] Dkt. No. 1 at ¶ 38.

[32] *Id.* at ¶ 37.

[33] *Id.* at ¶ 41.

Plaintiff is a citizen of this district and has its livelihood at stake in this controversy, this factor weighs heavily in favor of the Western District of Texas.

      iii.     <u>Familiarity with Governing Law is Neutral</u>.

27. "This factor most commonly applies where the destination venue is in a different State." *In re TikTok*, 85 F.4th at 365. "This factor does not weigh in favor of transfer when both districts are equally capable of applying the relevant law." *Id.* In *In re TikTok*, the Fifth Circuit recognized that federal judges regularly apply the law of a state other than the one in which they sit. *Id.* Accordingly, the Fifth Circuit has "hesitated to find that this factor weighs in favor of transfer when there are no exceptionally arcane features of Texas law that are likely to defy comprehension by a federal judge sitting in [another state's district court]." *Id.*

28. Defendants have identified no arcane or unusual features of Kansas contract law that would present any challenge for this Court. This case involves a straightforward breach of contract. The legal principles at issue are well within the competence of any federal court.

29. Defendants' choice-of-law argument also warrants scrutiny. Despite taking the position that no binding contract exists, Defendants simultaneously argue that Kansas law should apply to this dispute. Those positions are in tension with one another. If there is no contract, there is no choice-of-law clause to enforce.

30. On balance, this factor is neutral at best and does not favor transfer.

      iv.     <u>Avoidance of Conflicts of Law or Application of Foreign Law is Neutral</u>.

31. Defendants concede in their Motion to Transfer Venue that there are no

apparent issues regarding conflicts of law at this stage. Plaintiffs agree with Defendants that, given the early posture of this case, this factor is neutral at best and does not favor transfer.

      v.      <u>Defendants Have Not Met Their Heavy Burden to Transfer Venue</u>.

32. Defendants cannot demonstrate, by materially more than a preponderance of the evidence, that the marginal gain in convenience under the public-interest factors will be significant. In fact, the majority of the factors are neutral at best and do not favor transfer. The most critical, however, strongly favors the Western District of Texas. Accordingly, this Court should deny this Motion.

**PRAYER**

For the reasons stated above, Plaintiff respectfully requests this Court deny Defendants' Motion to Transfer Venue for Forum Non Convenience, and for such other and further relief to which Plaintiff may be justly entitled.

Dated: June 9, 2026

Respectfully submitted,

DANIELS & TREDENNICK PLLC

 */s/ Douglas A. Daniels*
Texas Bar No. 00793579
doug.daniels@dtlawyers.com
6363 Woodway Drive, Suite 700
Houston, Texas 77057
713.917.0024 *Telephone*
713.917.0026 *Facsimile*

***ATTORNEY FOR PLAINTIFF***

**OF COUNSEL:**

DANIELS & TREDENNICK PLLC
Jordan T. J. Howes
jordan.howes@dtlawyers.com
6363 Woodway Drive, Suite 700
Houston, Texas 77057
713.917.0024 *Telephone*
713.917.0026 *Facsimile*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been served on June 9, 2026, via the Court's CM/ECF system.

 */s/ Douglas A. Daniels*
Douglas A. Daniels

15