**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| INTERNATIONAL TRAILER GROUP, LLC, a Texas Citizen, | § § § | |
| Plaintiff | § § | |
| v. | § § | Case No. 1:25-cv-01168 |
| SHORT GO, INC. d/b/a TWISTER TRAILER, a Kansas and Louisiana Citizen, and BOSS RANCH, LLC, a Louisiana Citizen, | § § § § § | |
| Defendants. | § § | |

## DEFENDANTS SHORT GO, INC. AND BOSS RANCH, LLC.'S REPLY IN SUPPORT OF ITS MOTION TO TRANSFER VENUE FOR FORUM NON CONVENIENS

This dispute arises from multiple iterations of draft Asset Purchase Agreements ("APA") and related negotiations concerning the proposed acquisition of Short Go's Twister Trailers. The draft APA documents and final terms of an agreement were never reached. Plaintiff International Trailer Group ("Plaintiff" or "ITG") nevertheless contends that these ongoing drafts somehow result in a binding agreement. In doing so, they conveniently omit various in-person meetings and real-time negotiations with Defendants in Fort Scott, Kansas, which are critical to the question of whether an agreement was reached and the actual terms of that were being negotiated.

Plaintiff's Response in Opposition to Defendants Short Go, Inc. ("Short Go") and Boss Ranch, LLC ("Boss Ranch") (collectively, "Defendants") Motion to Transfer Venue under 28 U.S.C. § 1404(a) based on forum *non conveniens* ("Plaintiff's Response) [ECF No. 21] crafts an incorrect narrative when compared against the actual facts. For the reasons set forth here and in Defendants' Motion to Transfer [ECF No. 20], this case should be transferred to the District of Kansas.

## SUMMARY

Plaintiff attempts to recast the negotiations as purely "electronic" while ignoring the substantive context reflected in the pleadings. Plaintiff contends the dispute involves only "the negotiating of the terms, the exchange of redlined drafts, the signing of the APA, and the readiness of the funds to close the purchase." *Id*. at ¶¶ 3, 14. That characterization asks the Court to disregard Plaintiff's own Complaint [ECF No. 1], Defendants' Answer [ECF No. 19], and Defendants' Motion to Transfer with its accompanying evidence [ECF No. 21]. Plaintiff's Complaint expressly ties the dispute to the Fort Scott, Kansas real property, along with the intellectual property, design drawings, patents, and software central to the proposed transaction. ECF No. 1 at ¶ 19. Defendants' affirmative defenses likewise emphasize Kansas-based evidence and negotiations, including onsite discussions bearing directly on contract formation and alleged breach. [ECF No. 19 at pgs. 19–20]. Without that Kansas-centered evidence, the Court cannot meaningfully assess whether any agreement existed**.** Significantly, to even assess the validity of Plaintiff's alleged agreement requires an understanding of referenced property which is all in Kansas and not fully defined in the alleged agreement. *See* ECF No. 11-1.

Plaintiff also takes inconsistent positions regarding the governing terms of the parties' negotiations and should be estopped from doing so. On the one hand, it asks the Court to treat draft APAs as enforceable and insists the language reflects an understanding of the parties. On the other, it asks the Court to disregard the same drafts' provisions reflecting the parties' intent that Kansas law would govern and that Kansas would serve as the forum. Plaintiff cannot have it both ways. While the parties dispute whether an agreement was ever formed, there is no genuine dispute that the negotiations consistently showed that if any agreement were to be formed, any disputes arising from such an agreement were to be resolved in Kansas and were to be governed by Kansas law.

## <u>ARGUMENT AND CITATION TO AUTHORITY</u>

1. **Motions to Transfer Under 28 U.S.C. § 1404(a) Do Not Impose a Heavy Burden and Turn on a Balancing of Party, Witness, and Judicial Interests**.

Plaintiff misstates Fifth Circuit case law by asserting that this case may only be transferred by a "heavy burden." Indeed, repeatedly *See* ECF No. 21 at Sec. II(A)(i)]("Defendant's Must Satisfy a Heavy Burden to Transfer Venue"); *see e.g., id.,* at Sec. V ("Defendants Have Not Met Their Heavy Burden to Transfer Venue"). That is not the standard.

As Defendants have explained, a court may transfer a case "[f]or the convenience of parties and witnesses, in the interest of justice." *In re Google L.L.C.*, 172 F.4th 450, 453 (5th Cir. 2026) (internal quotation omitted). The relevant inquiry is whether transfer would do more than merely shift inconvenience from one party to another. *Bennett v. Moran Towing Corp.*, 181 F. Supp. 3d 393, 398 (S.D. Tex. 2016). Where the movant shows that the proposed transferee forum is clearly more convenient, good cause exists, and transfer is appropriate. *SQIP, LLC v. Cambria Co., LLC*, 728 F. Supp. 3d 447, 452 (E.D. Tex. 2024) (citation omitted).  That is the case here.

Defendants have identified multiple factors demonstrating that Kansas is the more convenient forum. *See* ECF No. 20 at pg. 7–11. Plaintiff, by contrast, does not meaningfully address inconvenience or any concrete burden at all associated with litigating in Kansas rather than Texas. This omission is telling. Notably, Plaintiff's counsel even acknowledged that transfer would be appropriate if based on the forum-selection clause contained in the parties' draft APA, which Plaintiff now claims to be the governing agreement. *See* ECF. No. 16-1 ("We would agree that, if Defendants based the FNC motion on the Kansas choice of forum clause, they would likely prevail" and "Plaintiffs are opposed to Defendants' motion to dismiss for forum non conveniens grounded on any arguments ***other than the forum selection clause in the contract***."). (emphasis

added.)  That failure to oppose transfer or even address based on contractual grounds is significant. *Infra*, Sec. 2(c).

In short, Defendants offer concrete, case-specific reasons why Kansas is the proper forum, grounded in the location of evidence, witnesses, and governing Fifth Circuit law. Plaintiff, by contrast, identifies no meaningful prejudice. Instead, it relies on unspecified Fifth Circuit authority which it claims to support its inapposite analogy to an "offshore platform off the coast of Equatorial Guinea," which serves better as an exercise in creative writing more than a legally persuasive argument. *See* ECF No. 21 at ¶ 4. Even still, Plaintiff's analogy is misplaced. As set forth in Defendants' Motion, the relevant evidence and many of the key witnesses reside in Kansas. And to the extent any alleged agreement is based on the document that Plaintiff's contends controls, an evaluation of that Kansas evidence (including real property) and testimony from those witnesses is necessary to the resolution of this case.

On this record furthered here and in Defendants' Motion [ECF No. 20], the Court is well within its discretion to transfer this action to Kansas.

2.  **The Substance of the Parties' Discussions and Plaintiff's Withdrawal from Negotiations Concern Whether an Agreement Existed, Not Just the Language of Any Alleged Formation**.

This case turns on whether an agreement was ever even formed, not just the interpretation of contractual terms of an alleged agreement or the mechanics of contract formation from those various iterations. Even a non-exhaustive review of Plaintiff's alleged final agreement – which Defendants' dispute forms a final agreement – (ECF No. 11-1) underscores that the central, unresolved questions regarding whether any agreement existed and, if so, what terms were agreed upon, will require predominantly Kansas-based evidence and witnesses in discovery. For example:

- Section 4.13 requires detailed information regarding Short Go's employees, consultants, and independent contractors, the majority of whom are located at Short Go's Fort Scott, Kansas location. *See* ECF No. 11-1 at 24–25.

- Section 4.9(f) requires an assessment of all "Real Property" in need of repair or restoration. Under the alleged agreement, "Real Property" is defined as the "HWY Property" and the "Downtown Property," both of which are located in Kansas but, as shown below, not fully defined. *See id.* at 9, 19.

- Exhibit A to the alleged agreement calls for a "Legal Description of Downtown Property" but includes only "[To Be Inserted]." Because the property is both undefined and located in Kansas, Kansas-based witnesses and the property itself are necessarily central.

- Exhibit B similarly calls for a "Legal Description of HWY 54 Property" but includes only "[To Be Inserted]." As with Exhibit A, the undefined nature of this Kansas property makes Kansas-based evidence and witnesses critical.

In fact, throughout the document, Plaintiff alleges that the parties repeatedly agreed upon requirements for further information pertaining directly to property and personnel residing in Kansas. *See e.g., id.* at pgs. 46 to 55 (requiring insertions and modifications).

Naturally, given the unanswered aspects of the parties' exchanged documents, it is not surprising that the record reflects the parties' discussions centered on the Twister Trailer business and its continued operations in Kansas, including the use of existing staff and resources. *See* ECF No. 20-1 at ¶¶ 6–8. That context underscores that this dispute concerns whether any agreement and the dealings between the parties that undermine or support the existence of an agreement. Those discussions, as already set forth by Defendants, involve onsite discussions and negotiations involving real property and staff alike, all of which is highlighted by the very document Plaintiff claims is enforceable. *See* ECF Nos. 11-1, 20, 20-1; *see also* Exhibit A, Mosing Second Declaration in Support of Motion to Transfer.[1]

---

[1] Because Plaintiff challenges who the key witnesses and evidence are for the first time in their Response, Defendants submit the Declaration of Steven Brent Mosing in support of their Reply as **Exhibit A**. Fifth Circuit courts recognize that a party may submit evidence and argument in a reply brief to address new arguments raised in a response. *See C&M Oilfield Rentals, LLC v. Location Illuminator Techs., LLC*, No. 18-CV-00039, 2020 WL 4708714, at *2 (W.D. Tex. July 13, 2020); *see also Anonymous Media Research Holdings, LLC v. Roku, Inc.*, No. 1:23-CV-1143-DII, 2024

a. **Real and Documentary Evidence Along with In-Person and Telephonic Discussions Are Central to This Matter**.

Plaintiff contends, without meaningful legal support, that because some communication occurred ***electronically***, this Court should disregard the pleadings, including Plaintiffs, which focus on Defendants' assets, personnel, and negotiations in Fort Scott, Kansas. *See* ECF No. 21 at 11. The record and law undermine that argument. Plaintiff's very own Complaint admits that "[d]iscussions between ITG and Twister Trailer" and a "preliminary purchase structure" encompassed an asset evaluation of the "HWY 54 Property, usable raw material inventory, tools, equipment, and machinery, and the Twister Trailer name, intellectual property, design drawings, patents, and software," as well as a "three-year property lease for Twister Trailer's office located in downtown Fort Scott, Kansas." ECF No. 1 at ¶ 19. Nearly all evidence central to Plaintiff's claims is therefore located in Kansas—not Texas. *See also supra,* Sec. 2.

This evidence likewise shaped the parties' negotiations. Plaintiff concedes that, in or around October and November 2023, the parties engaged in both in discussions involving Perez, Mosing, and their respective teams. *See* ECF No. 1 at ¶¶ 16–17; *see* also Ex. A at ¶¶ 6, 8-9 . Those discussions were in-person and telephonic and always grounded in conditions observed and evaluated onsite with Defendants' personnel. *See* Ex. A at ¶ 7-11, 13. The parties' failure to reach a final agreement arose from those in-person and telephonic exchanges, not merely from email correspondence. As negotiations progressed, Perez and ITG actively evaluated Twister Trailer's Kansas-based property and assets, including its on-site server, customer trailer ramps, and customer information maintained onsite by Short Go staff *See* Ex. A at ¶ 12. Accordingly, critical evidence bearing on Plaintiff's representations regarding the meaning of incomplete terms in the

---

WL 4182592, at *3 (W.D. Tex. July 10, 2024) (permitting a defendant to supplement a § 1404(a) motion with declarations and evidence concerning relevant witnesses).

purported drafts of the agreement cannot be gleaned from electronic communications alone. Even the open questions regarding the physical property and personnel of Short Go highlight a need for greater understanding of Kansas property and personnel.

The relevance of Kansas-based witnesses and evidence becomes even more pronounced in light of Plaintiff's asserted defenses of unclean hands and estoppel, as well as Defendants' counterclaims for tortious interference with contract and tortious interference with prospective business advantage.[2] Those claims arise directly from the parties' negotiations and subsequent conduct affecting Short Go's business relationships. In particular, Defendants allege that Plaintiff interfered with Short Go's relationship with NTS, at the time a significant distributor of Twister Trailer inventory. NTS's role in Short Go's operations was centered in Kansas, where it regularly interacted with Defendants to facilitate distribution. Despite that relationship, Plaintiff is alleged to have taken steps to undermine NTS's ongoing business with Short Go in an effort to affect the value of the proposed transaction. Testimony and evidence relating to those events, including the conduct of Kansas-based personnel and the nature of the NTS relationship onsite with Kansas personnel, are central to Defendants' claims and defenses just as they are in uncovering the frivolity of Plaintiff's claims.

As such, courts within the Fifth Circuit have rejected arguments like Plaintiff's that try to curtail rightful and necessary discovery due to technology. While technological advances may reduce the burden of accessing some proof, physical evidence and location-specific facts remain meaningful considerations in the transfer analysis. *Wet Sounds, Inc. v. Audio Formz*, LLC, No. A-17-CV-141-LY, 2017 WL 4547916, at *2 (W.D. Tex. Oct. 11, 2017), adopted, 2018 WL 1219248 (W.D. Tex. Jan. 22, 2018) (citing *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 316 (5th Cir. 2008)).

---

[2] Defendants are concurrently amending their Answer under Fed. R. Civ. P. 15(a)(1)(A) to include counterclaims.

Here, the substance of the parties' in-person and telephonic discussions, Perez's physical activities in Kansas, along with the physical and documentary evidence tied to Defendants' Kansas-based assets identified in Plaintiff's Complaint, are central to the resolution of this case. Therefore, the Motion to Transfer Venue should be granted.

### b. Key Witnesses Reside in or Near Fort Scott, Kansas, and the Cost of Attendance in the Western District of Texas Is Burdensome.

Plaintiff attempts to minimize the scope of relevant witnesses by asserting that only a handful of executives and counsel matter. The record shows otherwise. Plaintiff also ignores that Defendants' principal place of business is in Kansas. *See* ECF No. 21 at 8.  Notably, while Plaintiff concedes that Defendants employ personnel in Kansas, it discounts unrebutted evidence that the majority of material employee witnesses known to both parties are located in or near Fort Scott, Kansas. Those witnesses would be required to travel approximately 600 miles, amounting to more than 20 hours of round-trip travel, to appear in the Western District of Texas. Mr. Mosing's first declaration details this burden, and Plaintiff offers no competent evidence to the contrary.

Notably, on several occasions, Plaintiff's principal, Daniel Perez, repeatedly traveled to Kansas during negotiations. Between October and November 2023 and frequently thereafter, Perez met in person with Mosing and key on-site personnel, reviewed inventory, and evaluated Defendants' property and operations. *See* Ex. A at ¶ 7-11. Those interactions also involved Defendants' General Manager, Marc Popejoy, and other Kansas-based employees with firsthand knowledge of the negotiations and underlying assets at issue. *Id.* These are precisely the witnesses Defendants identified in their Motion and supporting declaration. *See* Docs. 20, 20-1.

Defendants' ability to present their defenses depends on testimony and evidence located overwhelmingly in Kansas, including witnesses tied to the relevant property, operations, negotiations, and Plaintiff's onsite actions. Requiring those witnesses to travel more than 600 miles

8

to testify in Texas imposes the very burden the Fifth Circuit disfavors. As the Fifth Circuit has explained, "[i]t is more convenient for witnesses to testify at home," because extended travel increases time away from work and the associated costs of litigation. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 317 (5th Cir. 2008).   As a consequence, transfer is favored.

    c.  **Plaintiff Should Be Estopped from Arguing Venue in the Western District of Texas**.

Finally, principles of fairness, equity, and consistency further support transfer. Plaintiff does not dispute that the parties' draft APA designated Kansas as the governing forum. Indeed, and as referenced in Defendants' Motion, the very document Plaintiff claims constitutes the agreement between the parties mandates such a transfer.  *See* ECF No. 11-1, Sec. 14.11 (all suits, actions, proceedings, or disputes arising out of or relat[ing]" to any agreement, which remained under negotiation, would be litigated exclusively in a court located in Bourbon County, Kansas.; *see also* ECF No. 20 at 4 n.2 (incorrectly cited as ECF No. 12-2).  Indeed, every iteration of the draft agreement Plaintiff now seeks to enforce reflects that understanding.  ECF No. 20-1 ¶ 9. Plaintiff also readily concedes that transfer would be mandated by governing law if the draft APA were in fact the parties' agreement and Defendants sought to move to transfer venue under it. *See* ECF. No. 16-1; ECF No. 20 at iv; *see* generally ECF No. 21. Plaintiff should be estopped from taking a contrary position now.

Significantly, entirely devoid from Plaintiff's Response is any suggestion of *inconvenience* to Plaintiff. This is a result of the longstanding acknowledgement that it was always intended that Plaintiff and Defendants would consider any dispute in Kansas. To accept Plaintiff's claims as true at this early juncture and at least accept that there could have been the existence of an agreement likewise requires giving the same face value to the hard evidence both reflected by

counsel's interactions and the draft APA's themselves that there is a willingness, not a great prejudice, to have venue in Kansas.

Accordingly, considering the relative prejudice to Defendants in comparison to the minimal prejudice to Plaintiff, Defendants respectfully request transfer of this matter to the District of Kansas.

## CONCLUSION

For the reasons set forth herein, as well as those in Defendants' Motion to Transfer [ECF No. 20], Defendants respectfully request that the Court transfer this case to the United States District Court for the District of Kansas.

DATED:  June 16, 2026                    Respectfully submitted,

SEYFARTH SHAW LLP


By: */s/ Jesse M. Coleman]*
        Jesse M. Coleman
        TX Bar No. 24072044
        jmcoleman@seyfarth.com
        700 Milam Street, Suite 1400
        Houston, TX  77002-2812
        Telephone:  (713) 238-1805
        Facsimile:  (713) 821-0659

        Mitch Robinson (Admitted *Pro Hac Vice*)
        GA Bar No. 457665
        mrobinson@seyfarth.com
        SEYFARTH SHAW LLP
        1075 Peachtree Street, N.E.
        Suite 2500
        Atlanta, Georgia  30309-3958
        Telephone:  (404) 885-1500
        Facsimile:  (404) 892-7056

        Attorneys for Defendants and Counterclaim-
        Plaintiffs
        SHORT GO, INC. d/b/a TWISTER TRAILER
        and BOSS RANCH, LLC

**CERTIFICATE OF SERVICE**

I certify that on June 16, 2026, I caused a true and correct copy of *Defendants Short Go, Inc. and Boss Ranch, LLC's Reply in Support of its Motion to Transfer Venue for Forum Non Conveniens* to be filed with the Clerk of the Court via the Court's CM/ECF system, which will electronically serve notice of same upon all counsel of record.

Douglas A. Daniels
Doug.daniels@dtlawyers.com
DANIELS & TREDENNICK PLLC
6363 Woodway, Suite 700
Houston, Texas  77057

**OF COUNSEL:**
Jordan T.J. Howes
Jordan@dtlawyers.com
DANIELS & TREDENNICK PLLC
6363 Woodway, Suite 700
Houston, Texas  77057

*/s/ Jess M. Coleman*
Jesse M. Coleman

11